Anderson, J.
The. appellants are creditors of theappellees by three promisory notes, one bearing date December 2nd, 1871, payable at three months; another-one bearing date November 22nd, 1871, payable at four months; and the other bearing date December 20, 1871, payable at four months. On the same day, the 20th of February 1872, they brought three several suits in equity, by suing out three several subpoenas and attachments in chancery, and on the 26th of the-same month filed a bill in chancery in each case, the same in substance; and in each ease upon affidavit of non-residence, and the return of the sheriff an order of publication was awarded against the defendants. The bill in the first case, avers the indebtedness of the defendants to the plaintiffs on the 2nd day of December 1871, in the sum of $438.29 cents, which it is averred is evidenced by a note of that date, payable three months after date. It appears from the bill and exhibits that neither note was due at the time suits were brought.
The bill avers that the firm of Johnston & Wolfe, the defendants, since the giving of the note had become insolvent. But that the said Wolfe owned a tract of' land in Frederick county, described in the bill, which was devised to him by the will of his father.
*807 It alleges that the defendants are non-residents of the state of Virginia, and were so at the commencement of this suit; and that the said Wolfe was in hopeless financial embarrassment.
It farther charges, that by a deed dated the 16th of December 1871, shortly before the institution of this suit, and recorded in the clerk’s office of Frederick county on the 27th of December 1871, the said Wolfe conveyed the aforesaid tract to said Johnston, which conveyance was made with intent to hinder, delay, and defraud creditors; by reason whereof the plaintiffs have just cause to apprehend that their said debts may not be paid, and are advised that by the equitable powers of the court, and by its attachment process, the said tract of land may be subject to its payment. The prayer is that the land may be sold and the proceeds applied to the payment of their debt.
At a subsequent term of the court, 24th of May 1872, the three suits by order of the court were to be consolidated, or proceeded in as one suit; and the plaintiffs were given leave to file their amended bill.
The amended bill adds to, and amends the allegation of the original bill, with regard to the conveyance of the land by Wolfe to Johnston, by alleging that the said Wolfe bn or before the 16th of December 1871, executed to the said Johnston his writing obligatory for a large sum of money, which he secured to said Johnston by a mortgage upon the land in question, which was admitted to record in the clerk’s office of the county court of Frederick on the 27th of December 1871. And it further charges that a deed purporting to be an assignment of the said mortgage to Miles White, bearing date the 10th of December 1871, which is the date of the mortgage, was recorded in the clerk’s office of said county court on the 5th of January 1872. *808 Copies of both deeds are in the record. The bill furfher charges that the said mortgage securing the bond was executed together with the bond, for the scqe pUrp0se of raising money thereon for the firm of Johnston & Wolfe. That White, who is a money dealer, agreed to advance the’money to Johnston on shid bond, and that the assignment was drawn up with a view to that end, and was left with White, who failed to comply with his agreement to advance the money; and the bond was never passed to him, but remains in the possession of Wolfe the obligor: which he was never to part with until the arrangements for raising the money were completed. And the bill charges that White fraudulently designing to make avail of said assignment without advancing the money, which was the condition on which it was placed in his hands, .refused to deliver it to Johnston or Wolfe who demanded it, but fraudulently retained it. And to the detriment of Wolfe & Johnston, and to the plaintiffs their creditors, had the assignment recorded as aforesaid, to effectuate his iniquitous and fraudulent design. The prayer is that the said White may be made a party to this and the original bill, and be compelled to answer them; and that the said assignment may be set aside, and for general relief. On the 20th of February 1872 notice Us pendens of these suits, the plaintiffs by their counsel caused to be recorded in the clerk’s office of the county court of Frederick.
The court is of opinion, upon the preliminary question raised by the appellees’ counsel, as to the jurisdiction of this court to hear this cause upon the appeal, that inasmuch as the three causes were essentially one, and were very properly consolidated, or united in one, and proceeded in and heard as one cause by the court below, that the matter in controversy upon this appeal *809 •exceeds the amount necessary to invest this court with jurisdiction; and therefore that the objection raised to the jurisdiction of this court must be overruled.
Upon the merits, the case is presented in two aspects. First, as a proceeding by foreign attachment in equity, or second, as a proceeding upon the principles of original equity jurisdiction. As has been seen, “the equitable powers of the court,” and “its attachment process,” both are invoked in the bill as clothing the court with power to relieve.
It would seem that the attachment process was relied on only as ancellary or auxiliary to the original •equity jurisdiction, and not as a distinct piimary ground of jurisdiction. Whether it is material to consider the distinction in this case I will not stop now to inquire, but will proceed with the more important inquiry, whether upon the case made by the original and amended bills, a court of equity has inherent original jurisdiction to afford relief.
By the statute Code of 1878, chap. 175, §2, p. 1126, a creditor before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment, or transfer of, or charge upon the estate of his debtor, which he may institute, after obtaining such judgment or decree,” &c. The plaintiffs were creditors at the time of instituting this suit. Their claim was debitum in prcesenti, solvendum in futuro. They have present interest in their debtor’s property on which alone they rely for the satisfaction of their ■debt at maturity, and the getting a conveyance or assignment of it by a third party surreptitiously and fraudulently, and “the placing that conveyance or assignment on record, may be the means of enabling him to transfer the property to an innocent purchaser :for. value, and thereby consummate his fraud, and irre *810 trievably prevent its application to the payment of the-appellants just debt; an apprehension which is well by the circumstances under which he procured the possession of the deed of assignment, and his unjustly and fraudulently withholding it from the debtor; and instead of returning it to him, causing it to be spread upon the record of the county court. It was a wrong to the debtor of the plaintiffs, and it was equally a wrong to them.
There can be no question that Johnston & Wolfe-could maintain a suit against White to set aside said assignment, or to compel its surrender to them. If' they could, why may not their creditors? Why may not their application to the interposition of a court of' equity be made, before their debt is due, to prevent this wrong? They have a present interest which is threatened to be destroyed by the consummation of the fraudulent transaction to the same extent that it would be if their debt was due. The injury to them is the same that it would he, if their debt were due. They have a present interest which is brought into-jeopardy by a fraudulent transaction, and which, if not at once arrested, by the interposition of a court of equity, will result in the total destruction of that interest.
It is a favorite doctrine of courts of equity, that they are invested with jurisdiction to prevent injury and wrong, as well as to compel the reparation of injuries, already accomplished.
I am of opinion, therefore, that a court of equity had jurisdiction to relieve the plaintiffs against the injury by which they were menaced, and the notes all falling due before any decree was pronounced in the cause, the first one falling due a few days after the suit was brought, the plaintiffs were entitled to a decree to sub *811 ject the land in question to the payment of their debt, they being entitled to priority over the subsequent attachment creditor. I am of opinion, therefore, to reverse the decree, and to remand the cause to the circuit court for further proceeding to be had therein in conformity with this opinion.
Moncure, P., concurred in the opinion of Anderson, J.
Christian and Staples, J’s, dissented.
Decree affirmed by a divided court.